UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERENCE ENOH,

       Petitioner,

  v.

JEFFERSON B. SESSIONS III, Attorney
General of the United States; THOMAS P.
BROPHY, Acting Director, Buffalo Field
Office, Enforcement and Removal
Operations, U.S. Immigration and Customs
Enforcement; DEPARTMENT OF
HOMELAND SECURITY; and TODD
TRYON, Facility Director, Buffalo Federal
Detention Facility,

       Respondents.[1]
_____

DECISION AND ORDER
16-CV-85(LJV)

## **INTRODUCTION**

The petitioner, Terence Enoh, is a civil immigration detainee currently held at the Buffalo Federal Detention Facility. On January 27, 2016, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See* Docket Item 1; *see also* Docket Item 4 (Amended Petition). On April 25, 2016, the respondents submitted their opposition. Docket Items 8 & 9. And on February 22, 2017, this Court ordered the respondents to provide Enoh with a bond hearing before an Immigration Judge ("IJ") pursuant to *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015). Docket Item 23. This Court further ordered that (1) "[a]t that hearing, Enoh will be entitled to release on bail unless the government establishes by clear and convincing evidence that he poses a risk of flight or a risk of

---

[1] The Clerk of Court shall amend the caption as set forth above. *See* Fed. R. Civ. P. 25(d) (automatic substitution of public officers).

danger to the community"; (2) the government must file a status report "[w]ithin 3 days of holding a bond hearing or stipulating to a bond amount"; and (3) Enoh's petition for a writ of habeas corpus was otherwise denied as premature. *Id.* at 16-17.

Because the respondents failed to comply with this Court's February 22, 2017 order requiring them to provide Enoh with a *Lora* bond hearing, the respondents are ordered to release Enoh under appropriate conditions of supervision.

## **BACKGROUND**

The factual and procedural background leading up to this Court's order of February 22, 2017, is generally set forth in that order. *See* Docket Item 23 at 2-4.

On March 2, 2017, the government filed a status report, which stated that a bond hearing had been held on February 28, 2017, "pursuant to this Court's Order." Docket Item 24 at ¶ 1. At the hearing, the IJ denied Enoh release on bond. *Id.* at ¶ 2. The hearing was not recorded. Docket Item 40 at ¶ 10. The government's status report omitted any reference to the standard of proof applied at the hearing, *see* Docket Item 24, and the IJ's order attached to the status report stated only that "DHS has shown that respondent is a substantial flight risk." Docket Item 24-1.

Perhaps predictably, Enoh followed that up with a half-dozen filings—including a Rule 60(b) motion for relief from judgment—in which he argues that the hearing he received on February 28, 2017, failed to comply with this Court's order. More specifically, Enoh claims that "the proper standard by 'clear and convincing evidence' as required by the Second Circuit Court of Appeals decision in *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015) was not met, in violation of this court's order." Docket Item 26 at 1-2.

On March 15, 2017, this Court issued a text order directing the government to respond to Enoh's Rule 60(b) motion for relief from judgment. Docket Item 30. On March 28, 2017, this Court issued another text order, which granted the government an extension of time. Docket Item 32. Both text orders directed the government to address the standard of proof applied at the bond hearing. Docket Items 30 & 32.

On April 14, 2017, the government submitted its response. Docket Items 40 & 41. On April 24, 2017, Enoh replied. Docket Item 45. And on May 5, 2017, the government moved for leave to file a sur-reply, Docket Item 50, which motion now is granted. This Court has considered the proposed sur-reply attached to the motion for leave, so a separate filing is unnecessary.

Additionally, on April 24, 2017, the government filed a notice of appeal from this Court's order of February 22, 2017. Docket Item 46.

## JURISDICTION

The nature and procedural posture of this matter raise a number of jurisdictional issues that are worth briefly addressing.

**A.  A District Court's Power to Enforce a Conditional Writ of Habeas Corpus**

This Court's order of February 22, 2017, which resulted from and was intended to resolve Enoh's petition for a writ of habeas corpus, was meant as a "conditional order."[2]

---

[2] "Conditional orders are essentially accommodations accorded to the state." *Phifer v. Warden, U.S. Penitentiary, Terre Haute, Ind.*, 53 F.3d 859, 864-65 (7th Cir. 1995). "They represent a district court's holding that a constitutional infirmity justifies petitioner's release" and "provide[] the state with a window of time within which it might cure the constitutional error." *Id.* at 865; *see also Herrera v. Collins*, 506 U.S. 390, 403 (1993) ("The typical relief granted in federal habeas corpus is a conditional order of release unless the State elects to retry the successful habeas petitioner, or in a capital case a similar conditional order vacating the death sentence.").

That is, it required the government to comply with certain conditions, including providing the petitioner with a *Lora* bond hearing and filing a status report, within certain time periods. Implicit in that order—although not explicitly stated—was that a failure to comply would result in the petitioner being afforded further habeas relief, up to and including release.[3]

In fact, ordering a petitioner's release is "the very essence of habeas relief." *Phifer v. Warden, U.S. Penitentiary, Terre Haute, Ind.*, 53 F.3d 859, 864 (7th Cir. 1995). As the Supreme Court put it: "Habeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him." *Fay v. Noia*, 372 U.S. 391, 430–31 (1963). Therefore, as a general matter, this Court retained the power to grant that relief if the government failed to comply with the February 22, 2017 order. *See Phifer*, 53 F.3d at 864 ("[I]f the state fails to meet the condition specified in the conditional order, the district court may order the petitioner's release."); *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1126 (S.D. Cal. 2008) ("habeas courts are empowered to make an assessment concerning compliance with their mandates") (citing *Harvest v. Castro,* 520 F.3d 1055, 1064 (9th Cir. 2008)); *see also Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010) ("a federal court always retains jurisdiction to enforce its lawful judgments, including habeas judgments").

**B.    Exhaustion**

Enoh appealed the IJ's decision at the February 28, 2017 hearing to the Board of Immigration Appeals ("BIA"). *See* Docket Item 40-1. The government's sur-reply therefore counsels this Court to await a decision from the BIA—i.e., to require that Enoh

---

[3] This language in this Court's order of February 22, 2017, mirrors similarly implicit language in *Lora.*

4

exhaust his administrative remedies. *See* Docket Item 50-1 at 3-4 (arguing that "[i]f the BIA affirms the immigration judge's bond determination, Enoh may then file a new habeas petition"). Along the same lines, the government's sur-reply argues that this Court should not reach "two new constitutional claims" that Enoh raised his in reply brief and that arise from the hearing that he received on February 28, 2017. *Id.* at 2. One of the new claims apparently is based on equal protection and the treatment of other detainees, while the other new claim is based on due process and the fact that there is no contemporaneous recording of the February 28, 2017 hearing. *See id.*

This Court agrees that it would be inappropriate to consider any new constitutional claims that Enoh may be attempting to raise in his reply, even if they are based on the hearing of February 28, 2017.[4] In the somewhat analogous[5] situation where a federal court grants a conditional writ requiring a state to retry a petitioner, it is well established that the federal court does not maintain continuing jurisdiction over new claims that arise from the new trial. *See, e.g.*, *Klein v. Crawford*, 2008 WL 942511, at *2

---

[4] With respect to the lack of a recording, the government recognized that this Court recently held in *Nguti v. Sessions*, 16-CV-6703(LJV), 2017 WL 1653030, at *7 (W.D.N.Y. May 2, 2017) (citing *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)), that due process requires a *Lora* bond hearing to be contemporaneously recorded. Although it is little more than common sense to record a *Lora* bond hearing (in fact, amicus curiae advised that other immigration courts do prepare audio recordings), this Court's decision in *Nguti* post-dates the February 22, 2017 order at issue here. Moreover—as the government argues, *see* Docket Item 50-1 at 3—the lack of a recording does not seem to have prejudiced Enoh, given his demonstrated ability to recollect and challenge what happened. For those reasons, this Court will not consider the lack of a recording to be noncompliance with this Court's February 22, 2017 order. Nor will this Court consider that argument to the extent that it is a new constitutional claim, as set forth above.

[5] Exhaustion is a statutory requirement for § 2254 petitions, rather than a court-imposed prudential requirement (as it is in the case at bar). *Compare* 28 U.S.C. § 2254(b)(1)(A) *with Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014).

5

(D. Nev. Apr. 7, 2008) (citing *Pitchess v. Davis,* 421 U.S. 482, 490 (1975)). Stated another way, once the state complies with the conditional writ, new claims based on the new trial need to be raised in a new petition. But as previously noted, if the issue simply is whether the government complied with the conditional writ, the federal court still can make a determination concerning compliance with its mandate. *See, e.g.*, *Gardner v. Forister*, 472 F. Supp. 1, 3 (W.D.N.C. 1979) (finding that blame lay with state for failing to retry petitioner within the time frame ordered in a conditional writ).

Thus, the sole issue before this Court is whether the government complied with the February 22, 2017 order, which required the government to justify Enoh's continued detention by "clear and convincing" evidence. To the extent that Enoh challenges the government's compliance, it is not a new claim. For the same reason—i.e., because it is not a new claim—this Court need not wait for Enoh to exhaust his administrative remedies. Indeed, this Court's order required the government to provide Enoh with a *Lora* bond hearing "within 10 days"—*not* within the time that it will take the BIA to review the hearing. If this were otherwise, then this Court's order of February 22, 2017, and the similar orders of other courts, including in *Lora* itself, would have no teeth. And if exhaustion or a new petition were required simply to challenge compliance with an order requiring a *Lora* bond hearing, it would result in the very harm that *Lora* should prevent: "prolonged" detention without due process during lengthy and backlogged removal proceedings.

C.    **The Government's Notice of Appeal**

The government maintains that it already has complied with this Court's order of February 22, 2017, by providing Enoh with a bond hearing on February 28, 2017. On

April 24, 2017, however, the government nevertheless filed a notice of appeal from the February 22, 2017 order.  *See* Docket Item 46.  "As a general matter, '[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'"  *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)).  Neither side has asserted that, by reason of the appeal, this Court lacks subject matter jurisdiction to issue a follow-up order regarding whether the government has complied with the conditions in the February 22, 2017 order.  Nevertheless, it is worth raising the issue to avoid any intrusion into the Second Circuit's exclusive jurisdiction.

First, this Court has jurisdiction to rule on Enoh's fully briefed Rule 60(b) motion, which he filed prior to the government's notice of appeal.  Under Federal Rule of Appellate Procedure 4(a)(4)(A)(vi) and (B)(i), the government's notice of appeal would not become effective, and would not divest this Court of jurisdiction, until after this Court rules on any timely Rule 60(b) motions.  *See Miller v. Marriott Int'l., Inc.*, 300 F.3d 1061, 1064 (9th Cir. 2002).

Beyond that, it generally is appropriate for a district court to follow up on a conditional writ of habeas corpus, regardless of whether an appeal is filed, because doing so essentially does nothing more than enforce a judgment.[6]  *Satterlee v.*

---

[6] "[C]onditional orders [in habeas proceedings] are ordinarily considered final."  *Phifer*, 53 F.3d at 862.  In other words, even though the order is conditional, "[t]he district court has stated the grounds for its judgment" and "matters no longer remain in the district court's hands."  *Id.*  Instead, "the only task that remains for the district court is the execution of judgment."  *Id.* ("If the state complies with [the] order, the petitioner will not be released; if the state fails to comply with [the] order, release will occur.").  And the filing of a notice of appeal does not automatically stay the execution of judgment.  *See,*

*Wolfenbarger*, 453 F.3d 362 (6th Cir. 2006)—a case in which the Sixth Circuit emphatically affirmed a district court's power to follow up on a state's failure to comply with a conditional writ even though a notice of appeal had been filed prior to the district court's follow-up decision[7]—illustrates the point:

> The district court issued a conditional writ, allowing Satterlee to apply for immediate release unless the state made within sixty days a plea offer of six to twenty years. Because the state made no such offer in the allotted time, the district court granted an unconditional writ ordering Satterlee's immediate release. The state contends that the district court did not have the power to order this remedy.
>
> What the state appears to have forgotten is that *it did not comply with the conditional writ* . . . . When the state fails to cure the error, i.e., when it fails to comply with the order's conditions, "[a] conditional grant of a writ of habeas corpus *requires* the petitioner's release from custody."
>
> . . .
>
> Thus, we conclude that the district court acted well within its power by ordering Satterlee's immediate release.

*Id.* at 368-69 (internal citations omitted).

The case at bar is different from *Satterlee* in one respect. Although this Court's February 22, 2017 order (Docket Item 23 at 16-17) was intended to resolve this matter, it did not explicitly direct entry of judgment, nor did it direct the Clerk of Court to close the case. As a result, judgment has not been entered pursuant to Fed. R. Civ. P.

---

*e.g., Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 2000 WL 511564, at *2 (S.D.N.Y. Apr. 27, 2000) ("The mere filing of an appeal does not act to suspend execution or enforcement of a judgment or injunction; a stay must be applied for and granted.") (quoting 20 Moore's Federal Practice (3d ed.1997), § 308-2).

[7] In *Satterlee*, the sequence of events was as follows: On June 23, 2005, the district court granted a conditional writ. E.D. Mich. Docket No. 2:03-cv-71682 ("Satterlee Docket") Item 25. On July 22, 2005, the respondent appealed. Satterlee Docket Item 33. On September 23, 2005, the petitioner moved for an unconditional writ. Satterlee Docket Item 36. On October 3, 2005, the respondent moved to stay execution of the judgment pending appeal. Satterlee Docket Item 37. And on October 19, 2005, the district court denied the motion for a stay and issued the unconditional writ. *Satterlee v. Wolfenbarger*, 2005 WL 2704877 (E.D. Mich. Oct. 19, 2005).

8

58(b)(2)(B), which may have caused some confusion and resulted in the government's notice of appeal being entered on the electronic docket as a "Notice of *Interlocutory* Appeal" [8] (emphasis added).

It is this Court's view that the order of February 22, 2017, was a final order and the lack of a separate judgment a clerical omission. But the government's view (according to a letter filed with the Second Circuit) seems to be that this "litigation has not yet resulted in final judgment because on March 9, 2017, after the Government had conducted a bond hearing for Petitioner, Petitioner filed a motion for relief from judgment, alleging that the bond hearing did not satisfy the standards allegedly set forth by the District Court. That motion remains pending before the District Court." 2d Cir. Case No. 17-1236, Document 10. Regardless of which view is correct, it is appropriate for this Court to decide in the first instance whether the government has complied with the order of February 22, 2017, and to correct any omission by directing that judgment be entered accordingly. *See generally Leonhard v. United States*, 633 F.2d 599, 609-12 (2d Cir. 1980). Doing so will not result in any prejudice, considering that both sides clearly contemplate further action from this Court regarding compliance with the order of February 22, 2017, or the entry of a final judgment.[9] Moreover, a petitioner suffers harm every day that he or she remains in custody in violation of the laws or Constitution

---

[8] The document itself is more simply entitled "Notice of Appeal," and it does not cite any legal basis for an interlocutory appeal. Docket Item 46.

[9] Enoh's Rule 60(b) "Motion for Relief from Judgment" certainly treats the order of February 22, 2017, as final, even describing the result as his having "won his case in a district court." As for the government, its letter to the Second Circuit requested a stay of that appeal, if necessary, "for consolidation with appeal of the final judgment in the district court litigation, *once it is entered*." 2d Cir. Case No. 17-1236, Document 10 at 2 (emphasis added). Additionally, the government filed its motion for leave to file a sur-reply after filing its notice of appeal, and the sur-reply does not raise any jurisdictional issues based on the appeal. See Docket Item 50-1.

of the United States; remedying such harm is the very essence of the writ of habeas corpus; and further delay based solely on the lack of a conditional judgment in a separate document would not alleviate the concerns articulated in *Lora.*

**D.    8 U.S.C. § 1226(e)**

Finally, with respect to this Court's jurisdiction, it bears repeating that 8 U.S.C. § 1226(e) bars judicial review of an IJ's "discretionary judgment" to deny a petitioner release on bond. That statute, however, "does not deprive the Court of jurisdiction over [petitioner's] constitutional and statutory challenges to his detention." *Vargas v. Davies*, 2016 WL 3044850, at *4 (S.D.N.Y. May 27, 2016) (collecting cases) (quoting *Gordon v. Shanahan*, 2015 WL 1176706, at *2 (S.D.N.Y. Mar. 13, 2015)).

## DISCUSSION

With those jurisdictional principles in mind, the issue before this Court is narrow: Did the government provide Enoh with a *Lora* bond hearing in compliance with this Court's February 22, 2017 order? More specifically, because it is undisputed that Enoh received some kind of hearing on February 28, 2017, did the IJ apply the "clear and convincing" evidentiary standard required in a *Lora* hearing? Both sides have been given an ample opportunity to submit evidence on and to brief that question.[10]

**A.    The Evidence at the February 28, 2017 Hearing**

As previously noted, the bond hearing that Enoh received on February 28, 2017, was not recorded. Enoh, however, provides an account of the hearing in his motion papers, while the government's response to Enoh's Rule 60(b) motion relies on a bond

---

[10] In fact, the government received a significant extension of time, *see* Docket Item 32, despite this Court's reluctance due to Enoh's continued detention.

memorandum, dated March 27, 2017, that the IJ later prepared concerning the hearing. *See* Docket Item 40-1 at 11-14. The salient facts concerning the evidence at the hearing are not disputed, and Enoh's account and the bond memorandum are largely consistent. Indeed, Enoh "has shown an ability to recount and challenge . . . the evidence and events at his bond hearing," as the government recognized when arguing that the lack of a recording did not result in any prejudice. Docket Item 50-1 at 3.

The three-page bond memorandum begins by briefly reciting the history of Enoh's removal proceedings. Docket Item 40-1 at 11-12. It then lists the exhibits that the parties submitted and states that Enoh was represented by counsel (apparently by telephone). *Id.* at 12. On its third page, the bond memorandum states the correct standard of proof ("the burden is on the DHS to establish by clear and convincing evidence that [Enoh] poses a risk of flight or a risk of danger to community"); the arguments that DHS made; and the basis for the IJ's conclusion. *Id.* at 13.

According to the bond memorandum, the government submitted three exhibits as its "evidence" at the hearing: "the post remand decision and order of the Immigration Judge on [Enoh]'s removal proceedings, a BIA decision on custody redetermination on May 11, 2016, and a copy of the [February 22, 2017] Order of [this Court]." *Id.* at 12. In connection with the first two documents, DHS argued that Enoh was "an extensive flight risk" because he "was found not to be credible in connection with his testimony relating to asylum and . . . he had failed to appear for hearings before an Immigration Judge on two occasions." *Id.* at 13. But the bond memorandum does not rely on—or even further discuss—the previous adverse finding with respect to Enoh's credibility. Moreover, it expressly discounts Enoh's failure to appear on prior occasions: "It is to be noted that

11

the one failure to appear was excused and the other order, although it initially resulted in an 'in absentia' Order of Removal, . . . was subsequently rescinded." *Id.*

Instead, the bond memorandum states that the IJ's decision to deny Enoh bail at the February 28, 2017 hearing relied on the general background facts that this Court recited[11] in its order of February 22, 2017:

> The primary argument of the DHS related to the fact that [Enoh][12] failed to cooperate with DHS authorities in connection with their attempt to remove him from the United States on September 15, 2015. As set forth in the District Court's Order "once Enoh was in custody, the Department of Homeland Security ("DHS") promptly scheduled him to be removed from the United States. But on September 15, 2015..according to the [respondents] and DHS records..Enoh refused to be removed. See docket item 8-2 at 4, 9-10. The [respondents] do not provide much detail on what, exactly, occurred. Enoh however says that he told ICE officers that he believed he would be killed if he were returned to his native county of Cameroon, either because of his political affiliation or because of his religion. …ICE officers told Enoh that he would be punished if he failed to comply with the removal, but Enoh responded..in effect..that he would prefer the punishment.
>
> The Order goes on to say that [Enoh] admits that he did not leave as planned and takes responsibility for his actions but he disputes any contention that he was not cooperative.
>
> It would appear that at the time the DHS attempted to remove [Enoh] from the United States pursuant to an administratively final Order of Removal [Enoh] refused to leave the United States. Clearly in this Court's opinion [Enoh] appears to be a person who does not intend to leave the United States under any circumstances and would do whatever is necessary to prevent his removal. Based thereon, the Court finds that the Department

---

[11] Needless to say, this Court had no first-hand knowledge of the factual background recited in its prior decision. Its recitation of the facts expressly relied on the submissions of the parties, some of which themselves included second-hand information. In some habeas cases, it may be necessary for this Court to hold an evidentiary hearing to further develop the facts. It was not necessary to do so here.

[12] The bond memorandum confusingly uses the term "Respondent" to refer to Enoh here, as well as to the respondents in this habeas proceeding when imperfectly quoting this Court's February 22, 2017 order. Alterations to party names have been made as appropriate.

12

of Homeland Security has met its burden to establish by clear and
convincing evidence that he poses a risk of flight.

Docket Item 40-1 at 13 (all ellipses verbatim in original).

Enoh's account of the hearing matches up pretty closely with the bond memorandum. According to Enoh:

> [T]he main argument of DHS and the adverse decision regarding the change of custody determination was based on the petitioner's alleged "refusal" to be removed on September 15, 2015. During the hearing, DHS did not present any witnesses to the incident, nor admit substantial evidence such as audio or video recordings of the event. Rather, DHS counsel, Mr. Levy, read excerpts from this court's opinion on page 3 ¶ 2 which states: "Thus, Enoh 'admits that he did not leave as planned' and take[s] responsibility for his actions.' …"

Docket Item 26 at 6; *see also id.* at 3 ("The government proffered no evidence, including but not limited to, statements from officers directly involved in the incident or video or audio recordings of the events that happened . . .").

According to the bond memorandum, Enoh also submitted documentary evidence of his own, which "consisted of affidavits from [his] sister and brother in law and affidavits from members of [his] Church." Docket item 40-1 at 12. But there is no discussion of that evidence in the bond memorandum, nor is there any explanation why it was trumped by this Court's third-hand recitation of a vague statement in DHS records that Enoh refused to be removed. Additionally, according to Enoh, the IJ gave his evidence short shrift at the hearing:

> During the hearing . . . , [the IJ] acknowledged that he received the support documents and that the petitioner had visitors in the courtroom. . . It is noted that there was no consideration of all the positive factors that was [sic] presented to the court. Nowhere in the bond hearing was it cited: Petitioner's length of stay in the U.S., petitioner's lack of criminal history, petitioner's education level, petitioner's family ties and community support, etc. These very pertinent positive factors that support the petitioner's release were not discussed at all . . . .

13

Docket Item 26 at 12. The government has submitted nothing that contests Enoh's account, which was written before the bond memorandum was drafted and—as previously noted—is not at all inconsistent with it.

Enoh also submitted similar such evidence to this Court. In his declaration in support of his Rule 60(b) motion, for example, he sets forth factors that suggest he is not a flight risk, including: (1) that he has been pursuing a degree in computer science; (2) that he has been regularly employed, most recently as "an IT contractor for Microsoft for 3 years"; (3) that he has not absconded from any immigration-related appointments or court proceedings; (4) that he has no criminal history; (5) that he has always had a stable address known to the government; (6) that he has community ties, including a 12-year relationship with a church where he served as a music minister; (7) that he has relatives in the United States; and (8) that he is able to post a reasonable bond with the assistance of his family and his church. Docket Item 27.

**B.    Analysis**

"Clear and convincing evidence" is "an intermediate standard of proof"— somewhere between a preponderance and beyond a reasonable doubt—that the Supreme Court has mandated "when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'" *Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (quoting *Addington v. Texas*, 441 U.S. 418, 423 (1979)). It is an attempt to "strike[] a fair balance between the rights of the individual and the legitimate concerns of the state." *Addington*, 441 U.S. at 431. It has been said that it requires the government to prove that a factual contention is "highly probable," *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984), but the

standard's precise requirements in a given proceeding may vary.  *See, e.g.*, *United States v. Sobin*, 56 F.3d 1423, 1429 (D.C. Cir. 1995).

A number of sources offer guidance on whether the IJ could possibly have applied this standard here.  Although Second Circuit case law on the relatively recent phenomenon of *Lora* bond hearings still is sparse, cases from the Ninth Circuit (from which the *Lora* court adopted the clear and convincing evidence standard) involving similar bond hearings are instructive and cited below.  Additionally, district courts, including this one, regularly apply the clear and convincing evidence standard in connection with criminal defendants' pretrial detention when it is based on danger to the community.  *See* 18 U.S.C. § 3142(f); *Obregon v. Sessions*, 2017 WL 1407889, at *6 (N.D. Cal. Apr. 20, 2017) ("Decades of precedent in the context of criminal bond hearings offer IJs the appropriate guidance in assessing whether the government has met its burden of proving dangerousness by 'clear and convincing evidence,' limiting detention only to 'specially dangerous individuals' as the Court described in *Zadvydas*.").

In this case, it is crystal clear that the IJ failed to apply the correct standard when instead of relying on "evidence"—even by proffer—he chose to rely on general factual background in this Court's order of February 22, 2017.  That order is, by any reasonable reading, not at all probative with respect to what happened when Enoh purportedly "refused to be removed" or whether he is a flight risk.  The order of February 22, 2017, simply summarized the parties' vague and somewhat contradictory statements on that issue.  It expressly noted the lack of detail in the government's submissions and that Enoh disputed any contention that he did not cooperate.  And it did not rely on the

15

parties' statements regarding Enoh's refusal to be removed, nor did it make any factual findings about exactly what happened.

Ironically, it is precisely because it is not this Court's province to hold *Lora* bond hearings or to assess Enoh's flight risk that this Court did not hold a factual hearing to resolve the parties' factual dispute. Yet at the hearing where it *would* be appropriate to investigate such matters, the IJ instead relied on the "scant, third-hand facts"[13]—as amicus curiae accurately described them, Docket Item 44 at 5—in this Court's order.

What is more, the IJ seems to conclude that because Enoh decided to stay and fight his removal, he *necessarily* is a flight risk. Docket Item 40-1 at 13 ("It would appear that at the time the DHS attempted to remove [Enoh] from the United States . . . [he] refused to leave the United States. Clearly in this Court's opinion [Enoh] appears to be a person who does not intend to leave the United States under any circumstances and would do whatever is necessary to prevent his removal."). But if that were true, then every detainee who contests his or her removal by not agreeing simply to leave—no matter the circumstances—could be incarcerated indefinitely without bail. And that would turn *Lora* on its head. *See also Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 53 (D.D.C. 2002) ("petitioner's simple and honest explanation that he did not want to return to a country to which he had no ties, without any accompanying affirmative lack of cooperation, is not a refusal to cooperate that supports an extension of detention").

---

[13] This Court cited the government's response to Enoh's petition, which included an affidavit from a DHS employee who reviewed Enoh's records. The employee had stated, based solely on the records, that Enoh refused to be removed. The records themselves and the government's submissions contained no further detail.

16

Furthermore, it is apparent that the IJ took no account of Enoh's positive evidence and his individual circumstances. The Second Circuit in *Lora* was expressly concerned about those detainees who "for a variety of *individualized reasons*, are not dangerous, have strong family and community ties, are not flight risks and may have meritorious defenses to deportation at such time as they are able to present them." *Lora*, 804 F.3d at 605 (emphasis added). And if there is one common theme that runs through the cases applying the clear and convincing evidence standard, it is the importance of considering individual circumstances. *See, e.g.*, *Haughton v. Crawford*, 2016 WL 6436614, at *2 (E.D. Va. Oct. 28, 2016) ("[E]ven in this narrow subset of circumstances where detention is permissible, the government is generally required to satisfy the burden of establishing that detention is merited in an individual case."); *Jarpa v. Mumford*, 211 F. Supp. 3d 706 (D. Md. 2016) ("[W]here detention is constitutionally permissible, it is so only because 'adequate procedural protections ... ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'") (quoting *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008)); *Castaneda v. Aitken*, 2015 WL 3882755, at *8 (N.D. Cal. June 23, 2015) (concluding, after lengthy discussion of petitioner's individual circumstances, that "the IJ was within his discretionary authority in concluding that the government had shown, by clear and convincing evidence, that Petitioner was a danger to the community"); *Rodriguez v. ICE Field Office Dir.*, 2012 WL 3051052 (W.D. Wash. June 28, 2012), (habeas relief should not be awarded where the IJ "considered both positive factors in the respondent's case (the respondent's lengthy physical presence, his family ties) and negative factors (his

criminal conviction, his ineligibility for cancellation of removal)"), *report and recommendation adopted,* 2012 WL 3038518 (W.D. Wash. July 25, 2012).

In fact, the Ninth Circuit directs courts applying the clear and convincing evidence standard to rely on the individual factors listed in the BIA's own case law:

> Immigration Judges may look to a number of factors in determining whether an alien merits release from bond, as well as the amount of bond that is appropriate. These factors may include any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Enoh's evidence seems to have been directly relevant to several of those factors, but the IJ does not address that evidence or those factors.

Finally, to the extent that Enoh argues that he did not receive an adequate opportunity to submit evidence or argument at the hearing,[14] this Court notes that at pretrial detention hearings a defendant has "the right to present witnesses on his behalf, the right to cross-examine witnesses and the right to present information by proffer or otherwise." *United States v. Melendez-Carrion*, 790 F.2d 984, 1013 (2d Cir. 1986). A civil immigration detainee should have similar opportunities in a *Lora* bond hearing.

---

[14] Enoh asserts that the IJ was hostile and raised his voice to Enoh's attorney. This Court does not rely on those allegations in reaching this decision, however.

**CONCLUSION**

In sum, the IJ failed to apply the clear and convincing standard. A single, vague note in DHS records regarding a refusal to be removed, repeated by others without first-hand knowledge, was not enough to satisfy the government's burden. Moreover, the IJ failed even to consider evidence mitigating any risk of flight. Rubber stamping a prior determination with the words "clear and convincing evidence" is simply insufficient.

The respondents now have had multiple opportunities to provide Enoh with the bond hearing to which he is entitled[15] and to present clear and convincing evidence that he is a risk of flight or a danger to the community. When Enoh requested a *Lora* bond hearing in November 2016, he was not provided one. *See* Docket Item 21-1 at 18. Then, after this Court ordered that Enoh receive a *Lora* bond hearing, the respondents failed to submit or proffer anything that could possibly meet their burden of establishing risk of flight or danger to the community by clear and convincing evidence. At this point, Enoh's release from unauthorized detention is the appropriate remedy. *See Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008) (ordering petitioner's release where the "evidence before the IJ failed, as a matter of law, to prove flight risk or danger pursuant to the Court's order."). And although this Court could afford the respondents

---

[15] Notably, the IJ described the February 28, 2017 bond hearing as a "US District Court Bond Hearing"—not as a *Lora* bond hearing. Docket Item 24-1. According to the bond memorandum, the IJ took the position that "because Enoh was never subject to mandatory custody pursuant to § 236(c) of the Act" he "did not fall within the purview of *Lora*." Docket Item 40-1. In other words, the IJ seems to say that because Enoh is a *non-criminal* alien in prolonged detention, his liberty interests are entitled to less protection than if he were a *criminal* alien. This Court rejected that counterintuitive reading of *Lora* in *Nguti v. Sessions*, 16-CV-6703(LJV), 2017 WL 1653030 (W.D.N.Y. May 2, 2017) (a § 1226(a) detainee has just as much entitlement to *Lora* bond hearings as a § 1226(c) detainee).

still another opportunity to comply with the law, this Court declines to do so in light of the particular circumstances detailed above.

## **ORDER**

Therefore, for all the reasons stated above and in this Court's order of February 22, 2017, it is hereby

ORDERED that Enoh's petition for a writ of habeas corpus is GRANTED; and it is further

ORDERED that the respondents shall release Enoh from detention under appropriate conditions of supervision; and it is further

ORDERED that the Clerk of Court shall take all steps necessary to close this case, including entering judgment in the petitioner's favor in accordance with this order.

SO ORDERED.

Dated: May 15, 2017
 Buffalo, New York

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE